IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM PERKINS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:15cv908-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

William Perkins, III, ("Plaintiff") filed an application for social security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381, *et seq*, on August 27, 2012.  His application was denied at the initial administrative level on January 10, 2013.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the application date of August 27, 2012, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry

of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to

Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review

of the record and the briefs of the parties, the court AFFIRMS the decision of the

Commissioner.

## II.      STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is

unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
> Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological
abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational

---

[3]  *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> presumption of validity attaches to the [Commissioner's] . . . legal
> conclusions, including determination of the proper standards to be applied in
> evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-seven years old on the date of the hearing before the ALJ.  Tr. 41.

Plaintiff testified that he had completed high school as well as some college courses.  Tr.

42.  Following an administrative hearing, and employing the five-step process, the ALJ

found at Step One that Plaintiff "has not engaged in substantial gainful activity since

August 27, 2012, the application date[.]"  Tr. 22.  At Step Two, the ALJ found that Plaintiff

suffers from the following severe impairments: "status post blunt left parietal head injury

resulting in multiple depressed skull fractures, alcohol dependence, and alcohol induced

dementia."  Tr. 22.   At Step Three, the ALJ found that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals the severity of

one of the listed impairments[.]"  Tr. 23.  Next, the ALJ articulated Plaintiff's RFC as

follows:

> [T]he claimant has the residual functional capacity to perform medium work
> as defined in 20 CFR 416.967(c) except that the claimant should not climb
> ladders or scaffolds and should not work around unprotected heights or
> hazardous machinery.  The claimant would be limited to simple, routine and
> repetitive tasks, making simple decisions.  The claimant can occasionally
> interact with supervisors and co-workers, but should have no interaction with
> the general public.

Tr. 24.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is unable to perform his past relevant work as a construction laborer and grass cutter.  Tr. 29.  Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 29.  The ALJ identified several representative occupations, including "hand packager," "clean-up worker," and "dishwasher."  Tr. 30. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since August 27, 2012, the date the application was filed[.]"  Tr. 30.

## IV.   PLAINTIFF'S CLAIM

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ erred by failing to develop the record relating to Plaintiff's mental impairments.  Pl.'s Br. (Doc. 14) at 2.

## V.   DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ failed to properly develop the record as it relates to Plaintiff's mental impairments. *Id.*  As support for this argument, Plaintiff asserts that "[u]nder particular circumstances, the ALJ has a duty to re-contact, or obtain clarification from, a consultative physician when the report of the consultative physician's report is inadequate or incomplete."  *Id*. at 8. Plaintiff argues that "[t]he ALJ in this case had a duty to re-contact Marnie Smith Dillon,

Psy.D, to seek to obtain a supplemental report for the purpose of providing clarification as to the import of the results of the Wechsler Memory Scale-Fourth Edition (WMS-IV) of December 5, 2012, memory testing, relative to Dr. Dillon's earlier, October 24, 2012, Disability Evaluation report." *Id*. at 8-9.  Plaintiff asserts that "[t]he ALJ did not have other medical evidence relating to Plaintiff's mental impairments sufficient to make an informed decision as to whether Plaintiff was disabled, and the reports of Dr. Dillon were inadequate and incomplete as to the import of the memory testing results and Plaintiff's degree of mental impairment and limitations." *Id*. at 10.  Specifically, Plaintiff takes issue with the WMS-IV evaluation's lack of "assessment as to the implications of the memory test scores relating to the degree to which Plaintiff is impaired in his ability to understand, remember, and carry our simple and complex instructions and to respond appropriately to supervision . . . or otherwise explain the meaning of the test results beyond providing numerical scores." *Id*. at 9.  As discussed more fully below, Plaintiff's argument fails.

Pursuant to 20 C.F.R. § 416.919p(a), the Commissioner will review the report of a consultative examination to determine whether specific information has been furnished.  If the report is inadequate or incomplete, the Commissioner will contact that doctor, give an explanation of its evidentiary needs, and ask the doctor to furnish the missing information or prepare a revised report.  20 C.F.R. § 416.919p(b).  A complete consultative examination report includes the following: (1) the claimant's major or chief complaints; (2) a detailed description of the claimant's history of the major complaints; (3) a description of pertinent

positive and negative detailed findings based on the history, examination, and lab tests related to the major complaints and any other abnormalities or lack thereof found during the exam or lab tests; (4) the results of the lab tests; (5) the diagnosis and prognosis for the claimant's impairment; (6) a statement about what the claimant can still do despite the impairments; and (7) an explanation or comment by the medical source on the claimant's major complaints.  *Id.* § 416.919n(c)(1)–(7).  If a consultative examination report does not include a statement about what the claimant can still do despite the impairments, "the absence of such a statement . . . will not make the report incomplete."  *Id.* § 416.919n(c)(6).

Here, consultative physician Dr. Marnie Smith Dillon ("Dr. Dillon"), whom the ALJ afforded significant weight, performed a formal mental status evaluation of Plaintiff in October 2012.  In December 2012, Dr. Dillon ordered Plaintiff to undergo the WMS-IV standardized test, which measures ability to learn and remember information presented verbally and visually.[5]  The October 2012 report, which was accompanied by the follow-up December 2012 standardized test, contained each of the seven aforementioned requirements to be considered complete.  While Plaintiff argues that the ALJ had a duty to re-contact Dr. Dillon regarding the December 2012 standardized test and its implication to her October 2012 report, 20 C.F.R. § 416.919p(b) does not impose such a requirement.

---

[5] *See* Gloria Maccow, Ph.D., WMS-IV: *Administration, Scoring Basic Interpretation*, (Nov. 21, 2016, 1:42 PM),   http://images.pearsonclinical.com/images/products/WMS-IV/WMS-IV_Webinar_   September 2011_Handout.pdf).

Thus, the undersigned concludes, pursuant to the regulations, that the ALJ did not have a duty to re-contact Dr. Dillon regarding the December 2012 WMS-IV testing.

Even if an ALJ does not have a duty to re-contact a consulting physician pursuant to the regulations, an ALJ *should* re-contact a consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir.2005). In such a scenario, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir.1994). However, if the evidence in the record is sufficient to allow for an informed decision, the ALJ has no duty to seek additional information outside of the record. *Robinson v. Astrue,* 365 F. App'x. 993, 999 (11th Cir. 2001) (holding that the ALJ did not err by not requesting an additional consultative examination or re-contacting claimant's treating physician because there was substantial evidence in the record for the ALJ to determine claimant's RFC). "In evaluating the necessity for a remand, [the court is] guided by whether the record reveals evidentiary gaps *which result in unfairness or clear prejudice*." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir.1995) (emphasis added). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports her allegations of disability." *Id.* at 936 n. 9.

Here, the record was sufficient to allow the ALJ to make an informed decision regarding Plaintiff's disability. In discussing the findings of Dr. Dillon, the ALJ noted:

The claimant also underwent a consultative psychological evaluation on October 24, 2012, performed by Marnie Smith Dillon, Psy.D. . . . On mental status examination, the claimant had some stuttering, but was cooperative. The examiner noted that the claimant's mood was "slow," but with intact insight, judgment, and decision making. . . . Dr. Dillon noted that the claimant appeared to function in the borderline to mild range of mental retardation. *It was felt that the claimant was moderately impaired in his ability to understand, remember, and carry out simple and complex instruction and to respond appropriately to supervision, co-workers, and work pressures in a work setting.* Dr. Dillon opined that the claimant had a guarded prognosis, as he did not appear motivated to seek employment. . . . Dr. Dillon later administered the Wechsler Memory Scale-Fourth Edition (WMS-IV) to the claimant on December 5, 2012. She noted that the claimant had appropriate speech and a logical stream of thought. The claimant achieved an Auditory Memory score of 65; Visual Memory score of 74; Visual Working Memory score of 70; Immediate Memory score of 67; and a Delayed Memory score of 67 (Exhibits B-13F and B-14F).

Tr. 27 (emphasis added). Later, in affording Dr. Dillon's opinion significant weight, the ALJ once again noted Dr. Dillion's indication "that the claimant appeared to function in the borderline to mild range of mental retardation[,]" and "felt that the claimant would have moderate limitations in his ability to understand, remember, and carry out simple and complex instructions and to respond appropriately to supervision, co-workers, as well as work pressures in a work setting." Tr. 28. Clearly, the ALJ considered both of Dr. Dillon's reports when summarizing her findings. Along with other evidence in the record,[6] such

---

[6] The ALJ also considered a Medical Source Statement provided by Dr. Vonceil C. Smith ("Dr. Smith"), whom the ALJ afforded "some weight." Doc. 16-2 at 28. Regarding that statement, the ALJ noted:

> Dr. Smith indicated that the claimant would have no restrictions in his ability to understand and remember simple instructions, but marked limitations in his ability to make judgments on complex work-related decisions due to the claimant's test results, history and behavioral observation. He noted that the claimant would have marked restrictions in his ability to respond appropriately to usual work situations and to changes in a routine work setting.

*Id.* at 26. The ALJ also considered the opinion of the state agency psychological consultant, Kristin Bailey, Ph.D. ("Dr. Bailey"), whom the ALJ afforded "little weight" as she was not a treating or examining

discussions indicate to the undersigned that there was sufficient information before the ALJ to determine Plaintiff's RFC and ultimate disability without re-contacting Dr. Dillon regarding the December 2012 WMS-IV test.

Moreover, Plaintiff has not shown that he suffered prejudice as a result of any alleged failure of the ALJ to perform further factfinding, because there is no evidence that the ALJ's decision would have changed in light of any additional information.  As noted above, the WMS-IV measures the ability to learn and remember information presented verbally and visually.  Scores in the 60s, which Plaintiff obtained in the categories of auditory memory and immediate memory, indicate intellectual disability of mild severity.[7] The ALJ considered such disability when he noted Dr. Dillon's October 2012 report indicating that Plaintiff was "moderately impaired in his ability to understand, remember, and carry out simple and complex instruction."  Tr. 27.  Furthermore, Plaintiff has not shown that any failure by the ALJ to re-contact Dr. Dillon resulted in an evidentiary gap culminating in unfairness or clear prejudice to Plantiff.  *See Brown,* 44 F.3d at 935 (11th Cir. 1995) ("In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.").  Instead, Plaintiff

---

physician.  *Id*. at 28.  Dr. Bailey indicated that Plaintiff "would have moderate limitations in most areas of functioning, with marked limitations in his ability to understand, remember and carry out detailed instructions.  *Id*.

[7] *See* Gloria Maccow, Ph.D., WMS-IV: *Administration, Scoring Basic Interpretation*, (Nov. 21, 2016, 1:42 PM), http://images.pearsonclinical.com/images/products/WMS-IV/WMS-IV_Webinar_ September 2011_Handout.pdf).

has merely hypothesized that re-contacting Dr. Dillon *could* have resulted in the ALJ imposing greater non-exertional limitations in the RFC findings, and *could* have resulted in the ALJ determining that Plaintiff is disabled. *See* Doc. 14 at 11 ("If the ALJ had re-contacted Dr. Dillon to obtain clarification of the meaning and implications of the memory test results, additional medical evidence obtained from Dr. Dillon, if indicative of a greater degree of mental impairment and limitation, *could* reasonably have resulted in greater non-exertional limitations in the RFC findings of the ALJ, and ultimately *could* reasonably have resulted in the ALJ determining that Plaintiff was disabled.") (emphasis added).

Accordingly, the undersigned concludes that the ALJ did not err by not re-contacting Dr. Dillon for clarification regarding the December 2012 WMS-IV standardized test.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 30th day of November, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE